**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC BAUMBACH,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; and EQUIFAX INFORMATION SERVICES, LLC;<br><br>Defendants. | ) | Case No. 26 C 4744<br><br>Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM OPINION AND ORDER**

In this matter before the magistrate judge on consent (D.E. 20), Plaintiff Eric Baumbach ("Baumbach" or "Plaintiff") sued consumer reporting agencies ("CRAs") Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"), alleging that after he notified Defendants that he was a victim of identity theft, they violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") by negligently and willfully: (1) failing to follow reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's credit reports, as required by 15 U.S.C. §1681e(b); (2) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i, including but not limited to parts and subparts; and (3) failing to comply with the provisions of 15 U.S.C. § 1681c-2, including failing to block information that resulted from identity theft. "Complaint"; D.E. 1, ¶¶ 28, 33. Before the Court is Trans Union's fully briefed motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ("Motion"; D.E. 43.)[1]

[1] No other Defendants have joined in the Motion.

## I. Legal Standard

On a Rule 12(c) motion for judgment on the pleadings, "[w]e take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Nautilus Ins. Co. v. Bee Quality Inc.*, 181 F.4th 737, 740 (7th Cir. 2026) (internal citations and quotations omitted). "The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing, so the standards for evaluating a Rule 12(b)(6) motion to dismiss also govern a Rule 12(c) motion for judgment on the pleadings." *Muthana v. Mullin*, 171 F.4th 967, 973 (7th Cir. 2026) (internal citations and quotation omitted). *See also Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518-19 (7th Cir. 2025) (reiterating that "plausibility standard" of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that a plaintiff must allege only enough facts to state a claim to relief that is plausible on its face, applied to Rule 12(c) motions). "When assessing the facial plausibility of a claim, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (internal citations and quotations omitted).

## II. Facts in Plaintiff's Complaint

Plaintiff alleges that on June 17, 2025, he was the victim of a crime when several individuals approached him, grabbed his phone out of his hand, and ran fraudulent purchases on two of his J.P. Morgan Chase Bank ("Chase") credit cards, in the amounts of $2,833 and $2,733 (the "Disputed Charges"), to a merchant unknown to Plaintiff. "Complaint"; D.E. 1, Ex. 1, ¶¶ 10-14. Plaintiff attempted to get his phone back, but after a physical altercation with the individuals, Plaintiff feared for his life and let the individuals make purchases with his phone. *Id.*, ¶ 14. Plaintiff alleges that the individuals then returned his phone and ran away, and he "immediately called

Chase to dispute the fraudulent charges," as well as 911, but the police did not show up. *Id.*, ¶ 15. "Chase deemed the false charges as accurate." *Id.* Afterward, Plaintiff's credit reports listed the disputed charges as delinquent. *Id.*, ¶¶ 16-17.

Plaintiff wrote three letters to Defendants in 2025, and two in early 2026, "notif[ying] Defendants that they were reporting inaccurate and fraudulent credit information to his credit reports" and requesting a reinvestigation because "he did not owe the balance and was a victim of a crime." *Id.* Along with the letters, Plaintiff sent Defendants a copy of his identification, a police report and other documents that he alleges show he was a victim of identity theft fraud and did not owe the balances listed as delinquent on his credit reports. *Id.*, ¶ 18. After Trans Union received Plaintiff's correspondence, it sent Automated Consumer Dispute Verifications ("ACDVs") to Chase Card Services for investigation into Plaintiff's claims. Trans Union Answer ("Answer"); D.E. 15, ¶¶ 19-20. Plaintiff contends that Defendants "never contacted any relevant witnesses to find what they knew about the fraud in their investigation." Complaint, ¶ 22. The credit reports issued by Defendants continue to report the disputed charges as delinquent. *Id.*, ¶ 21.

**ANALYSIS**

Trans Union contends that Plaintiff's claims should be dismissed with prejudice because they are not "objectively and readily verifiable" and amendment would be futile. Motion at 1. For the following reasons, the Court disagrees.

**I. Trans Union Asserts No Grounds to Dismiss Plaintiff's Section 1681c-2 Claim.**

Section 1681c-2(a) of the FCRA requires a CRA to "block the reporting of any information . . . that the consumer identifies as information that resulted from an alleged identity theft" after the CRA receives: "(1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the

consumer that the information is not information relating to any transaction by the consumer." 15 U.S.C. § 1681c-2(a). As noted above, Plaintiff's Complaint alleges that he provided these items to Defendants, including Trans Union, specifically: (1) his identification, (2) a police report and other documents showing the charges were fraudulent, (3) letters to Defendants identifying the information in the documents, and (4) explaining that the reported charges were the result of identity theft and that Plaintiff received no benefit from the charges.

In the briefing on its Motion, Trans Union does not so much as mention Plaintiff's claim that it violated 15 U.S.C. § 1681c-2 for failing to block information that resulted from identity theft. *See* Def.'s Mem. in Support of Judgment on the Pleadings ("Def. Mem."); D.E. 44. In response, Plaintiff insists that he adequately pled that Trans Union violated this section by alleging that he "notified Defendant that he did not incur the disputed charges" and "substantiated this with the exact documentation that the FCRA contemplates – not just one, but two identity theft reports." Pl.'s Response to Def.'s Motion ("Pl. Resp."); D.E. 47 at 9, citing 15 U.S.C. § 1681a(q)(4).

In reply, Trans Union contends, for the first time, that the Complaint "includes only vague and barebone allegations under 1681c-2," and fails to "overcome[] the exceptions to the statute's application." "Def. Reply"; D.E. 48 at 4. First, as stated above, the Court does not agree that these allegations are too vague or barebones to survive. They are sufficiently specific under Section 1681a(q)(4). Plaintiff's Complaint alleges that he repeatedly notified Defendants by letter that their credit reporting was false, inaccurate, and fraudulent, and that "was more than enough to allow [Trans Union] to defend itself." *See Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 816 (7th Cir. 2023) (holding that "in the era of notice pleading, [the FCRA] complaint alleging that [the CRA's] reporting . . . was 'false, misleading, and inaccurate' was more than enough to allow [the CRA] to defend itself, . . . dispel[ing] any notion of waiver"); *Lang v. TCF Nat. Bank*, 249 F. App'x

464, 466-67 (7th Cir. 2007) (reversing and remanding district court's dismissal of FCRA complaint for failure to state a claim, explaining that while the defendant "may have a compelling argument for summary judgment if it can demonstrate undisputably that a CRA did not notify it of [the plaintiff's] dispute, [] at this point [the plaintiff's] recovery under the FCRA is plausible, which is all that notice pleading requires"). Second, Trans Union does not suggest why any exceptions may apply. Third, "arguments raised for the first time in a reply brief are waived." *Jackson v. City of Madison*, 176 F.4th 1005, 1016 (7th Cir. 2026). Even if these vagueness and "exceptions" arguments had merit, and they do not, Trans Union waived them.

## II. Plaintiff States Plausible Claims for Relief Under Sections 1681e(b) and 1681i.

As a credit lender, or creditor, to Plaintiff, Chase was a "furnisher" under the FCRA, "provid[ing] consumer data to consumer reporting agencies," such as Trans Union, to "compile the furnished data into a comprehensible format, allowing others [including furnishers] to evaluate the creditworthiness of a given consumer." *Denan*, 959 F.3d at 294. "In essence, creditors report information related to a consumer's credit profile to CRAs, and CRAs document that information on the consumer's credit report." *Sykes v. Experian Info. Sols., Inc*., 183 F.4th 904, 907 (7th Cir. 2026). "When a consumer disputes an item in his credit report with a CRA, the CRA's first step is to transmit that dispute to the furnisher. The furnisher then investigates the consumer's dispute and reports its findings to the CRA." *Chaitoff*, 79 F.4th at 817, citing 15 U.S.C. § 1681i(a)(2). If, after an initial investigation, the consumer continues to dispute an item in the credit report, CRAs must conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate," considering "all relevant information submitted by the consumer." 15 U.S.C §§ 1681i(a)(1)(A), (a)(4). CRAs must "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit reports. 15 U.S.C. §1681e(b).

Trans Union contends that because Chase "verified [Defendant's] reporting" of the June 17, 2025, charges by confirming that Plaintiff is responsible for the charges at issue, Plaintiff's dispute about the accuracy of his credit report involved "legal issues concerning the validity of a debt," whereas CRAs were responsible only for issues of factual inaccuracy. Def. Mem. at 5. More specifically, Trans Union argues that "determining whether the alleged fraudulent charges are legally attributable to Plaintiff would require an assessment of the circumstances surrounding the alleged identity theft and the Chase account," which "cannot be resolved through a review of Trans Union's credit reporting records" and thus are "not objectively and readily verifiable," and "no reinvestigation by Trans Union could have uncovered an inaccuracy in [the plaintiff's] credit report." *Id.* at 3, 5-6. Plaintiff contests this characterization, arguing that his claim that the disputed charges were the result of fraud and identity theft is "fundamentally factual – 'I didn't incur these fraudulent charges.'" Pl. Mem. at 7-9.

"A CRA's liability under both § 1681e(b) and § 1681i(a) depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages." *Chaitoff*, 79 F.4th at 811-12. "Accuracy . . . encompasses both truth and completeness—a report that is misleading or materially incomplete is inaccurate," but the requirement of CRA accuracy "never reaches beyond questions of fact," meaning that "CRAs are not liable for reporting information that may be legally inaccurate." *Id.* at 809, 814. "'The power to resolve . . . legal issues exceeds the competencies of [CRAs].'" *Sykes*, 183 F.4th at 908, quoting *Denan*, 959 F.3d at 295. "The central question is whether the alleged inaccuracy turns on applying law to facts or simply examining the facts alone. Stated differently, the question is whether it should have been clear from the objectively verifiable information available to [the CRA] that the report was inconsistent or inaccurate." *Sykes*, 183 F.4th at 908 (quotations and citations omitted). "For [the consumer's] claim

to proceed, therefore, her complaint must plausibly allege that [the CRA] reported false, misleading, or materially incomplete information about her creditworthiness." *Id.* at 907.

Contrary to Trans Union's contention, the Court finds that Plaintiff has pled claims based primarily on a factual dispute, namely whether Plaintiff incurred the Disputed Charges or whether they resulted from theft or identity fraud. There are "pure" legal disputes, such as in *Denan*, where "determining whether the debts were enforceable required applying choice-of-law and sovereign-immunity principles to an undisputed set of facts," but "the line separating legal from factual questions can be slippery." *Chaitoff*, 79 F.4th at 814, citing *Denan* 959 F.3d at 292-93. Likewise, in *Sykes*, the Seventh Circuit held that a dispute as to whether the plaintiff's mortgage was discharged required an analysis of the legal effect of a deed in lieu of foreclosure and of a discharge order on that debt. *Sykes*, 183 F.4th at 909. But "[s]ometimes, when a consumer claims a debt is not owed [] presents a factual question," such as if a "consumer argues that the furnisher has factually misidentified him." *Chuluunbat v. Experian Info. Sol'ns*, 4 F.4th 562, 568-69 (7th Cir. 2021). In *Chaitoff*, the Seventh Circuit held that the plaintiff's claims presented a factual question where all parties agreed that the plaintiff had entered into a certain payment plan but the defendant CRA had omitted the plan from the plaintiff's credit report; the dispute was not over the legal effect or interpretation of the payment plan. The *Chaitoff* court held that "[g]iven the FCRA's command for maximal accuracy, the omission was a misleading factual inaccuracy that can give rise to liability under § 1681e(b)." 79 F.4th at 815-16. In *Chuluunbat*, by contrast, the Seventh Circuit held that the dispute at issue "necessarily involve[d] interpreting legal rights to a debt and making legal judgments" as to ownership of the debts and whether a debt was assigned. *Id.* Nevertheless, the *Chuluunbat* court added that if the plaintiffs had presented evidence "showing that the legal

ownership of their debts ha[d] been adjudicated, the investigation may have been factual in nature." *Id.*

The Court finds the allegations in Plaintiff's Complaint, viewed in the light most favorable to Plaintiff, most closely follow those in *Chaitoff*, and plausibly state a claim as to the factual accuracy of Trans Union's credit report – i.e., whether, in fact, the CRAs complied with the FCRA's requirements in reinvestigating Plaintiff's claims that the disputed charges were the result of identity theft and fraud and whether the CRAs employed reasonable procedures in doing so. Trans Union implies that Chase's confirmation of the disputed charges should end the discussion of its culpability under the FCRA because it is not obligated or qualified to "assess[] the circumstances surrounding the alleged identity theft" and "whether the alleged fraudulent charges are legally attributable to Plaintiff." Def. Mem. at 5. But the Court does not read Plaintiff's allegations as requiring a determination of whether the disputed charges were "legally attributable" to Plaintiff. Plaintiff's allegations here do not require Trans Union "to resolve legal disputes, [or] interpret contracts or statutes." *Sykes*, 183 F.4th at 908.

Rather, the Court reads the Complaint in line with *Chaitoff*, in which the Seventh Circuit held that a CRA may be liable for violating the FCRA's provision to conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate" and to "follow reasonable procedures to assure maximum possible accuracy of the information" despite the creditor having confirmed the CRA's reporting. *Chaitoff*, 79 F.4th at 818. The *Chaitoff* court reasoned that the defendant CRA "did nothing, although it easily could have done something with the information that the consumer provided," in particular, by including the information it had omitted, and thus, that there was a genuine dispute as to whether the defendant CRA's investigations after the plaintiff alerted it to a discrepancy were reasonable. *Id.* (internal citations

and quotations omitted). Taking Plaintiff's allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately stated a claim that the CRAs, including Trans Union, violated these provisions of the FCRA by failing to follow reasonable procedures and by reporting "false, misleading, or materially incomplete information about [Plaintiff's] creditworthiness." *Sykes*, 183 F.4th at 905-07.

## CONCLUSION

For the foregoing reasons, the Court denies Trans Union's Motion (D.E. 43)

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: November 9, 2026**